**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

                                      Case No. 12-20287

v.                                    Hon. Mark A. Goldsmith
                                        Hon. Gerald E. Rosen

D-4 JOHNATHAN L. OLDHAM,

        Defendant.

_____/

**OPINION AND ORDER REGARDING DEFENDANT'S**
**MOTION FOR DISCLOSURE OF JURY WHEEL MATERIALS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ February 7, 2014 _____

PRESENT:  Honorable Gerald E. Rosen
                     Chief Judge, United States District Court

## I.  INTRODUCTION

Defendant Johnathan L. Oldham is charged in an April 4, 2013 amended first

superseding indictment with racketeering conspiracy, murder in aid of racketeering,

attempted murder in aid of racketeering, six counts of distribution of cocaine base, and

several firearm offenses.  Through the present motion filed on April 12, 2013, Defendant

seeks the production of various records bearing upon the processes by which the grand

jury was selected and the petit jury venire will be selected in this case, as well as

additional materials relating more broadly to the juror selection process employed in this

District.[1]  Defendant contends that this information is essential to his determination whether to pursue a challenge to the jury selection process in this case under the Jury Selection and Service Act ("JSSA"), 28 U.S.C. § 1861 *et seq.,* and under the Sixth Amendment to the U.S. Constitution, both of which guarantee the right to a jury venire that represents a fair cross-section of the community.  *See United States v. Allen,* 160 F.3d 1096, 1103 (6th Cir. 1998).[2]

Pursuant to Administrative Order No. 00-AO-060 of this District, to the extent that a party seeks juror selection materials beyond the information contemplated in this order — *i.e.,* juror number, race, and Hispanic ethnicity — such a motion is referred to the Chief Judge for a "case-by-case" determination whether the movant has shown "good cause" for the requested materials.  *See also* Administrative Order No. 13-AO-016, 2013 Juror Selection Plan § (t)(1) (providing that if a litigant seeks additional information in support of a jury challenge apart from juror number, race, ethnicity, or sex, "the matter

---

[1]Several co-defendants, each of whom is charged with racketeering conspiracy and various other offenses, have joined in Defendant's motion.

[2]Although Defendant's motion is captioned as a motion for disclosure of jury wheel materials, for an evidentiary hearing, and to dismiss the indictment or stay the proceedings, it is evident from the arguments advanced in support of this motion that Defendant's present objective is to secure information that he views as necessary to ascertain whether there are statutory and constitutional infirmities in the juror selection process.  This information, in turn, would be presented at an evidentiary hearing in support of a motion to dismiss the indictment.  Consequently, this Court views its inquiry as limited to Defendant's threshold request for materials relating to the juror selection process, as opposed to the merits of any JSSA or constitutional challenges Defendant might subsequently elect to pursue.  Nonetheless, as discussed below, the substantive law governing such challenges has some bearing upon the Court's disposition of the present motion.

2

will be referred to the chief judge for disposition, who may order disclosure upon a

showing of good cause").  Because Defendant's motion seeks such additional disclosures,

it has been referred for a determination by this Court in its role as Chief Judge of this

District.

Having reviewed the parties' briefs in support of and in opposition to Defendant's

motion, the Court finds that the relevant facts and legal arguments are adequately

presented in these written submissions, and that oral argument would not aid the

decisional process.  Accordingly, the Court will decide Defendant's motion "on the

briefs."  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.  This

opinion and order sets forth the Court's rulings on this motion.

## II.  BACKGROUND

Under the juror selection plan adopted by the Judges of this District in 2000 and

subsequently approved by the Judicial Council of the Sixth Circuit, potential jurors are

drawn from a "master jury wheel" in which "each county within a division is

proportionally represented."  *See* Administrative Order No. 00-AO-083, 2000 Juror

Selection Plan § (h)(2); *see generally United States v. O'Reilly,* No. 05-80025, 2008 WL

115537, at *2-*3 (E.D. Mich. Jan. 10, 2008) (Friedman, C.J.) (describing this District's

2000 juror selection plan).[3]  The exact percentages of this mandated proportional

---

[3]In 2013, the Judges of this District adopted a revised juror selection plan, which also has been approved by the Judicial Council of the Sixth Circuit.  *See* Administrative Order No. 13-AO-016, 2013 Juror Selection Plan.  Because the 2000 juror selection plan was in effect at the time the grand jury for this case was selected, the Court generally will refer to this plan in the

representation, in turn, are determined by reference to the numbers of registered voters in each county within the division.  *See* 2000 Juror Selection Plan § (h)(2).[4]

The present case lies within the Flint division of this District, and is governed by the terms of the juror selection plan applicable to this division.  Specifically, the grand jury in this case was drawn from a master wheel of 20,002 potential jurors created in 2008, under a formula that called for the following proportional representation of the four counties comprising the Flint division:

| County | Percentage of Total | Number of Names |
|--------|--------------------|-----------------|
| Genesee | 57.964% | 11,593 |
| Lapeer | 10.761% | 2,153 |
| Livingston | 22.263% | 4,453 |
| Shiawassee | 9.012% | 1,803 |
| | 100% | 20,002 |

*See* Administrative Order No. 08-AO-034 (calling for the creation of a new Flint master jury wheel in accordance with this formula).[5]

_____

remainder of this opinion, except where the terms of the 2013 plan prove relevant to the point under discussion.  Although the 2013 plan differs in various respects from its predecessor, these revisions are largely immaterial to the disposition of Defendant's motion.

[4]The District's current juror selection plan retains this same mechanism for achieving proportional representation of counties in master jury wheels.  *See* 2013 Juror Selection Plan § (h)(2).

[5]Although Defendant's motion cites the formula under which the 2011 Flint division master jury wheel was created, (*see* Defendant's Motion at ¶ 4 (citing Administrative Order No. 11-AO-007)), the grand jurors in this case actually were drawn from the Flint master jury wheel created in 2008.  This 2008 master jury wheel has since been emptied, and all jurors selected from this master wheel have completed their service.  In addition, the 2011 master jury wheel was due to expire in April of 2013, and a new master jury wheel for the Flint division was created at that time.  *See* Administrative Order No. 13-AO-007 (calling for the creation of a new master jury wheel for the Flint division); Administrative Order No. 13-AO-011 (correcting the formula to be used in creating this 2013 master jury wheel).

4

Defendant's motion rests on the proposition that "[u]nder representation of African-Americans on jury venires throughout the Eastern District of Michigan has been a chronic problem." (Defendant's Motion at ¶ 5.) Against this backdrop of historically "insufficient minority representation in [this District's] jury pools," (Eastern District of Michigan Ad Hoc Jury Committee 6/1/2012 Executive Summary at 1),[6] Defendant seeks various materials bearing upon this District's juror selection process, from which he can then mount constitutional and statutory challenges to the purportedly systematic underrepresentation of African-Americans in the pools from which grand jurors were drawn and petit jurors will be drawn in this case.

Specifically, Defendant requests access to the following materials:

(a)     the juror selection plan in effect in this District at the time the grand jurors were summoned in this case;

(b)     a description of the procedure used by the electronic data processing system to randomly select and assign names during the implementation of the juror selection plan;

(c)     the court clerk's directives to any contractor that implements any portion of the juror selection plan, and the contractors' certifications as required under the plan;

(d)     the information collected by the court clerk to monitor the Court's compliance with the juror selection plan, any pertinent statutes, and the quality of the data sources provided by the Michigan Secretary of State;

---

[6]The Eastern District of Michigan Ad Hoc Jury Committee was formed in March of 2010 to "seek and implement solutions to increase minority representation in the Court's jury pools," (*id.*), and a June 1, 2012 executive summary of its report is available online at http://www.mied.uscourts.gov/News/Docs/jury%20cmte%20rpt%20-%20exec%20summ.pdf.

5

(e)     any AO-12 forms created that relate to the master jury wheel and qualified jury wheel used to summon grand jurors in this case;

(f)     any other statistical or demographic analyses produced to ensure the quality and compliance of the master jury wheel and qualified jury wheel used to summon grand jurors in this case;

(g)     any accessible data for the master jury wheel closest in time to the date grand jurors were summoned, in an electronic format that includes participant number, race, gender, Hispanic ethnicity, year of birth, and zip code;

(h)     any accessible data for the qualified jury wheel closest in time to the date grand jurors were summoned, in an electronic format that includes participant number, race, gender, Hispanic ethnicity, year of birth, and zip code;

(i)     the sources of data, in electronic form, used to create the master jury wheel from which grand jurors were summoned in this case, including voter registration lists, lists of licensed drivers, and lists of residents holding state identification cards for the four counties that make up the Flint Division;

(j)     the juror qualification and/or summons forms for persons summoned to potentially be grand jurors in this case; and

(k)     the disposition of each potential grand juror in this case as to excusal, deferment, disqualification, or selection.

(Defendant's Motion at ¶ 15.)  In Defendant's view, he is entitled to inspect these materials in order (i) to determine whether there is a basis for challenging this District's juror selection process under the Sixth Amendment or the JSSA, and (ii) if so, to prepare a motion seeking the dismissal of the indictment in light of any such statutory or constitutional infirmities in the juror selection process.

### III.  ANALYSIS

6

A.      **The Standards Governing Defendant's Motion**

Under the juror selection plan adopted in this District in 2000, as well as the more recent plan adopted in 2013, the court clerk is directed to retain and provide public access to the first three categories of information sought in Defendant's motion:  (i) the juror selection plan for this District, (ii) a "description of the procedure used by the electronic data processing system to randomly select and assign names during the implementation of" the juror selection plan, and (iii) "the clerk's directives to any contractor that implements any portion of this plan, including the execution of any pure random selection procedures, and that contractor's quarterly certifications required under [section] (g)(3)" of the juror selection plan.  2000 Juror Selection Plan § (s)(3); *see also* 2013 Juror Selection Plan § t(5).[7]  In addition, the Judges of this District have recognized that in preparing a challenge to the racial or ethnic composition of a jury wheel or panel, a party is entitled to inspect juror questionnaire information encompassing juror numbers, race, and Hispanic ethnicity.  *See* Administrative Order No. 00-AO-060 at 1; *see also* 2013 Juror Selection Plan § t(1).

To the extent that a party seeks additional or more detailed information and records bearing upon this District's process for juror selection, this Court has mandated that such requests will be reviewed by the Chief Judge on a "case-by-case basis," and will be granted upon a showing of "good cause."  Administrative Order No. 00-AO-060

---

[7]In light of these provisions in the 2000 and 2013 juror selection plans, it is clear that Defendant is entitled to access to the first three sets of materials specified in his motion.

7

at 1; *see also* 2013 Juror Selection Plan § t(1).  As explained by former Chief Judge

Zatkoff, a party may establish the requisite "good cause" by showing that the requested

information is necessary to prepare and present a motion challenging the jury selection

process.  *United States v. Montini,* No. 03-80228, 2003 WL 22283892, at *3 (E.D. Mich.

Sept. 3, 2002); *see also O'Reilly,* 2008 WL 115537, at *3 (Friedman, C.J.).  Accordingly,

to establish his entitlement to the information sought through the present motion,

Defendant must show that these materials will assist him in identifying and

demonstrating a violation of either the Sixth Amendment or the JSSA.[8]

**B.     Defendant Has Not Demonstrated a Need for Information Beyond That Which Is Ordinarily Available in Order to Assist Him in Determining Whether the Juror Selection Process in This Case Violates the JSSA or His Sixth Amendment Right to an Impartial Jury.**

As this Court previously has explained, "[t]he Sixth Amendment guarantee of an

'impartial jury' has been construed as encompassing the right to a jury drawn from a fair

cross section of the community."  *United States v. Brown,* 128 F. Supp.2d 1034, 1038

---

[8]In his motion, Defendant seemingly claims a broader entitlement to these materials, citing the Supreme Court's decision in *Test v. United States,* 420 U.S. 28, 30, 95 S. Ct. 749, 750 (1975), for the proposition that he has an "unqualified right to inspection of jury lists" in order to prepare and file a motion challenging this District's juror selection process.  (Defendant's Motion, Br. in Support at 8.)  Yet, when confronted with a similar claim of a defendant's "unqualified right" to inspect juror selection materials, former Chief Judge Friedman of this District observed that *Test*'s "holding of an 'unqualified right' applied only to [jury] lists," and did not purport to extend to "all records or papers relating to the jury selection process." *O'Reilly,* 2008 WL 115537, at *3.  Upon reviewing the language of the JSSA and the pertinent case law, Chief Judge Friedman concluded that a defendant's right of inspection "encompasses only such data as [the defendant] needs to challenge the jury selection process."  *O'Reilly,* 2008 WL 115537, at *3; *see also United States v. Fieger,* 2008 WL 1902054, at *2 & n.7 (E.D. Mich. Apr. 29, 2008) (Rosen, C.J.).

8

(E.D. Mich. 2000) (internal quotation marks and citations omitted).  Likewise, the JSSA declares as a "policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes."  28 U.S.C. § 1861.

A claim that jury selection violates the "fair cross section" requirements of the Sixth Amendment and the JSSA can be proven through direct or indirect evidence.  *See United States v. Ovalle,* 136 F.3d 1092, 1099 (6th Cir. 1998); *see also Brown,* 128 F. Supp.2d at 1039.  Where, as here, there is no direct evidence that the jury selection process used in this District invariably leads to the under-representation of the group identified by Defendant, African-Americans, Defendant must rely upon indirect evidence to sustain his claim.  Defendant's initial burden is to establish the three elements of a *prima facie* showing of a "fair cross section" violation:  "(1) that a 'distinctive group' is being excluded from the jury pool; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in comparison to the group's representation in the community at large; and (3) that this disparity is attributable to systematic exclusion of the group in the jury selection process."  *Brown,* 128 F. Supp.2d at 1039 (citations omitted).

In this case, both sides agree that African-Americans qualify as a "distinctive group" whose alleged exclusion from a jury pool would satisfy the first prong of a *prima*

*facie* case, *see Brown,* 128 F. Supp.2d at 1040, so the Court proceeds to the remaining two prongs of a *prima facie* showing of a fair cross section violation. To satisfy the second element of his *prima facie* case, Defendant must show that the representation of African-Americans in venires from which juries are selected in the Flint division of this District is not "fair and reasonable" in comparison to the representation of this group in the community at large. *See Brown,* 128 F. Supp.2d at 1039. Under the third prong of this standard, Defendant must show that any such disparity in the representation of African-Americans is "attributable to systematic exclusion of the group in the jury selection process." *Brown,* 128 F. Supp.2d at 1039. Thus, in the context of the present motion, Defendant must demonstrate that the jury selection materials he seeks are necessary to an effort to establish these two elements of a *prima facie* case. *See Fieger,* 2008 WL 1902054, at *5 (explaining that "the question at the present juncture is not whether Defendant has made a *prima facie* showing of a fair cross section violation, but whether the additional information he seeks would aid him in establishing the elements of such a showing").

Defendant confronts an immediate obstacle on this point, however, as his motion and initial brief in support are bereft of any argument that would forge the requisite link between the particular juror selection materials he seeks and the disputed second and third elements of a *prima facie* showing of a fair cross section violation. First, as to the question whether the representation of African-Americans in venires from which juries

10

are selected is fair and reasonable in comparison to the percentage of African-Americans in the community at large, Defendant has failed to identify any disparity whatsoever between the percentage of African-Americans in the four counties comprising the Flint division and the representation of African-Americans in the 2008 Flint division master or qualified jury wheels from which the grand jurors in this case were drawn.  Instead, he merely asserts, by *ipse dixit,* that since the underrepresentation of African-Americans on juries in the Detroit division of this District "has been a chronic problem," this same underrepresentation necessarily must "exist[] in the Flint branch of the Court too." (Defendant's Motion, Br. in Support at 1.)  Likewise, counsel for Defendant states that upon "consulting a number of attorneys who practice in the Flint Division," he has been "advised" that just as underrepresentation of minorities has been a concern in the Detroit division, "chronic under-representation of minorities occurs in petit jury venires [in the Flint division] as well."  (Defendant's Reply Br. at 2.)

Plainly, this bare assumption that the Detroit and Flint divisions of this District share similar patterns of African-American underrepresentation in jury venires relative to this group's percentage of the overall community population cannot suffice to establish the second prong of a *prima facie* showing of a fair cross section violation.  More to the point, the means to ***test*** this assumption are readily available to Defendant from the materials to which he may gain access under the administrative orders of this Court and the terms of the JSSA.  In particular, under Administrative Order No. 00-AO-060 of this

District, Defendant may obtain information regarding the racial composition of the qualified jury wheel from which the grand jurors in this case were drawn.  Moreover, because the source of this qualified wheel — *i.e.,* the underlying 2008 Flint division master jury wheel — has been emptied and all persons selected from this master wheel have completed their jury service, Defendant is entitled to inspect "all records and papers compiled and maintained by the jury commission or clerk before the master wheel was emptied."  28 U.S.C. § 1868; *see also* 2013 Juror Selection Plan § t(4).  These materials, like those available under the administrative order, will enable Defendant to determine whether the representation of African-Americans in the qualified wheel was fair and reasonable in comparison to the percentage of African-Americans in the overall population of the four counties making up the Flint division.

Indeed, upon conducting its own review of these materials, the Court has been able to ascertain the extent of the disparity between African-American representation on the qualified jury wheel from which the grand jury in this case was drawn and the percentage of African-Americans in the overall Flint division population.  Specifically, the records maintained by the court clerk for the qualified wheel from which the grand jury was drawn reveal that 6.95 percent of the individuals in this qualified wheel were African-American.  By contrast, data from the 2010 census show that African-Americans comprised 10.8 percent of the 18-years-and-older population of the four counties that comprise the Flint division.  Under the pertinent case law, it is doubtful that this absolute

12

disparity of just under four percent is sufficient to establish that the representation of African-Americans in the qualified wheel was not "fair and reasonable." *See United States v. Greene,* 971 F. Supp. 1117, 1128 (E.D. Mich. 1997) (citing cases holding that absolute disparities of up to 21.7 percent did not constitute substantial underrepresentation that would satisfy the second prong of a *prima facie* showing of a fair cross section violation).[9]  In any event, the relevant point for present purposes is that Defendant may thoroughly explore the issues and questions surrounding the second element of his *prima facie* case by resort to information that is either publicly available or made available to litigants under this District's juror selection plan and administrative orders.

This leaves the third and final prong of a *prima facie* showing of a fair cross section violation, under which Defendant must establish that the purported underrepresentation of African-Americans is due to systematic exclusion of this group from the juror selection process.  The Sixth Circuit has explained that this prong entails a showing "that the challenged disparity is inherent in the jury selection process itself," and not attributable to extrinsic factors.  *Bates v. United States,* No. 10-1094, 473 F. App'x

---

[9]The Court further notes that it might have somewhat overstated the absolute disparity of roughly four percent, as this rests on a comparison to the overall population of 18-years-and-older African-Americans in the Flint division.  In fact, the proper comparison would be to the subset of the African-American population that is eligible for jury service.  *See United States v. Forest,* 355 F.3d 942, 954 (6th Cir. 2004); *see also Greene,* 971 F. Supp. at 1127 n.11 (defining absolute disparity as "the difference between the percentage of a certain population group eligible for jury duty and the percentage of that group who actually appear in the venire").

446, 450-51 (6th Cir. Apr. 2, 2012).  For present purposes, then, the question is whether the particular materials sought by Defendant would assist him in identifying an element of this District's juror selection process that has resulted in consistent underrepresentation of African-Americans in Flint division jury pools.  As noted earlier, the first three items on Defendant's list of requested materials are available under the terms of this District's juror selection plan, so the Court need only address the remaining eight items on this list.

Item (d) of Defendant's list of requested materials seeks the disclosure of information collected by the court clerk to monitor the Court's compliance with the juror selection plan, any pertinent statutes, and the quality of the data sources provided by the Michigan Secretary of State.  As Defendant observes, the court clerk is required under this District's juror selection plan to collect this information and "distribute it periodically to the judges of the court."  2000 Juror Selection Plan § t(1); *see also* 2013 Juror Selection Plan § u(1).  In support of this request, Defendant states that this information "is needed to understand any changes made to procedures by the Clerk or any specific interpretations of the plan implemented by the Clerk."  (Defendant's Reply Br. at 10.) Yet, to the extent that the court clerk's collection of this data and dissemination of it to the Judges of this District has led to changes in juror selection procedures used in this District, any such changes would be reflected in amendments to the juror selection plan or related administrative orders, and these materials are available to the public.  Beyond this, Defendant has not identified any authority that would grant him a window into the

14

internal deliberations of this District's Judges as they monitor the operation of the juror selection plan and consider possible revisions to this plan,[10] nor has he explained how the disclosure of this information would assist him in establishing the elements of a fair cross section violation.

Item (e) requests the disclosure of any AO-12 forms relating to the master and qualified jury wheels used to summon grand jurors in this case. As stated earlier, now

---

[10]Notably, the Judges of this District have already been rather forthcoming on this score, through the public dissemination of a report prepared by an Ad Hoc Jury Committee that was tasked with "seek[ing] and implement[ing] solutions that will increase minority representation in the Court's jury pools." (Eastern District of Michigan Ad Hoc Jury Committee 6/1/2012 Executive Summary at 1.) This committee, consisting of a number of Judges of this District, conducted an extensive study of the Court's juror selection process and "provided substantive recommendations that the Bench approved in October 2011." (*Id.*) As noted earlier, an executive summary of this committee's report is available online, and copies of the complete report are available upon request.

While Defendant cites the executive summary for the proposition that "[u]nder representation of African-Americans on jury venires throughout the Eastern District of Michigan has been a chronic problem," (Defendant's Motion at ¶ 5), the summary observes at its outset that this District's juror selection plan recently withstood a challenge contending that a "systemic flaw" in the plan has led to "consistent underrepresentation of African Americans in Detroit Division juries," (Eastern District of Michigan Ad Hoc Jury Committee 6/1/2012 Executive Summary at 1 (citing *Bates,* 473 F. App'x 466)). The executive summary also highlights the findings of Paula Hannaford-Agor, a jury consultant retained by the Ad Hoc Jury Committee to assist in the committee's efforts:

> Importantly, Ms. Hannaford-Agor concluded that the Court's juror selection process does not systematically exclude racial minorities. Rather, the data showed that the high non-response rate in Wayne County is a major contributor to the underrepresentation of African Americans in federal jury pools. The actions taken by the Court are designed to improve the accuracy of addresses and the delivery of mailings to occupied dwellings, increase the response rate, and educate the community about the importance of jury service.

(*Id.*)

that the 2008 master jury wheel for the Flint division has been emptied and all jurors drawn from this wheel have completed their service, the records compiled and maintained by the court clerk for this master wheel are available for public inspection. So far as this Court is aware, these records encompass the AO-12 form, or the equivalent information, for the qualified jury wheel from which the grand jurors in this case were drawn. Accordingly, Defendant is entitled to inspect this information, as well as any other desired materials maintained by the court clerk for the 2008 Flint division master jury wheel.

Next, item (f) seeks "any other statistical or demographic analyses produced to ensure the quality and compliance of the Master Jury Wheel and the Qualified Jury Wheel that were used to summon grand jurors in this case." (Defendant's Motion at ¶ 15(f).) Defendant explains that these materials "will help validate and expand the information shown on the form AO-12." (Defendant's Reply Br. at 10.) So far as this Court is aware, no such statistical or demographic analyses exist. To the extent that they do, however, and to the extent that such analyses would be among the records compiled and maintained by the court clerk pertaining to the 2008 master jury wheel for the Flint division, these materials are available for public inspection under the JSSA, *see* 28 U.S.C. § 1868, and under this District's juror selection plan, *see* 2000 Juror Selection Plan § s(2).

Items (g) and (h) seek certain specified master and qualified jury wheel data in

16

electronic format.  Insofar as Defendant requests the disclosure of juror-related information that is subject to inspection under Administrative Order No. 00-AO-060 — namely, juror number, race, and Hispanic ethnicity — the Court grants this request.  As to other juror-related information sought by Defendant — *i.e.,* gender, year of birth, and zip code — he has failed to suggest how this information might assist him in his effort to establish a systematic exclusion of African-Americans from the jury selection process. Moreover, to the extent that Defendant seeks this information in an electronic format, it is not the practice of the court clerk to provide this data in electronic form, and Defendant has not identified a sufficient basis for deviating from this usual practice.  Rather, he states only that electronic data will permit him to "validate the information on form AO-12 and in any other statistical analyses" to which he is given access, (Defendant's Reply Br. at 11), but Defendant has not suggested any reason for believing that the statistical data compiled by the court clerk in the AO-12 report and in other similar records might be inaccurate or otherwise in need of "validat[ion]."  *See Fieger,* 2008 WL 1902054, at *6 (noting that the defendant in that case had "not suggested any basis for believing that the Clerk might have failed to comply with" the pertinent terms of the juror selection plan, and that requests for information bearing upon the clerk's compliance with the plan constituted an unwarranted "fishing expedition" (internal quotation marks and citation omitted)).

Next, item (i) requests the sources of data, in electronic form, from which the

master jury wheel is compiled.  As Defendant recognizes, this data is received from the

State of Michigan, and consists of records of registered voters, licensed drivers, and

individuals who have been issued state personal identification cards.  *See* 2000 Juror

Selection Plan § f(1).[11]  As such, Defendant fails to suggest why this Court would be at

liberty to disseminate to individual litigants data it has received from the State of

Michigan for the limited purpose of creating a master jury wheel.  Moreover, it is the

Court's understanding that at least some of the information sought in this request — *i.e.,*

race and Hispanic ethnicity — is not included in the data received by the Court from the

State of Michigan.  In addition, Defendant once again fails to identify good cause for the

disclosure of this data, where the pertinent portions of this requested information — most

notably, the race, Hispanic ethnicity, and county of residence for those potential jurors

added to the master jury wheel — can be obtained from the sources to which Defendant

is granted access under this District's juror selection plan and Administrative Order No.

00-AO-060, and where Defendant's mere desire to "validate" this information, (*see*

Defendant's Reply Br. at 11), does not provide a basis for questioning the accuracy of the

information to which Defendant has access or the court clerk's performance of the duties

mandated under the juror selection plan.

      Finally, items (j) and (k) seek the disclosure of the juror qualification forms for

each person summoned to potentially become a grand juror in this case, as well as the

---

[11]The current juror selection plan draws from these same sources, as well as "persons
who have filed Michigan state income tax, if available."  *See* 2013 Juror Selection Plan § f(1).

disposition of each such individual, whether excusal, deferment, disqualification, or selection. To the extent that the court clerk has compiled and maintained records for the 2008 Flint division master jury wheel that would be responsive to this information request — *e.g.,* reports disclosing the racial composition of the qualified jury wheel from which the grand jury in this case was drawn, or data compilations that disclose race and other demographic information for the smaller pool of individuals selected from the qualified wheel and summoned as potential grand jurors in this case — the Court has previously explained that this information is available for public inspection under the JSSA and this District's juror selection plan. To the extent, however, that Defendant seeks to inspect the juror qualification forms sent to each individual prospective grand juror, or to be informed of the disposition of each such potential grand juror, the Court has previously determined that such juror-specific materials are not necessary to a showing that a distinctive group has been systematically excluded from the juror selection process, *see Fieger,* 2008 WL 1902054, at *7; *O'Reilly,* 2008 WL 115537, at *4, and the Court finds no reason to conclude differently here. Instead, Defendant again asserts only that this information is needed to "validate" that the court clerk acted in accordance with the juror selection plan and the relevant administrative orders, (*see* Defendant's Reply Br. at 12), but he once again has failed to identify any basis for believing otherwise.

In sum, the Court is satisfied at the present juncture that the information and

19

materials available to Defendant under 28 U.S.C. § 1868, this District's juror selection plan, and Administrative Order No. 00-AO-060 provide sufficiently fertile ground for Defendant's desired inquiry into a possible fair cross section violation. If this inquiry should uncover evidence supportive of a *prima facie* showing of such a violation, and if Defendant can then demonstrate a need for additional, more specific information that would assist him in establishing such a violation, he may revisit this matter with the Court in light of these developments.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's April 12, 2013 motion for disclosure of jury wheel materials (docket # 192) is GRANTED IN PART and DENIED IN PART, in accordance with the rulings in this opinion and order.

Specifically, Defendant shall be granted access to:

(i)      items (a) through (c) listed in paragraph 15 of his motion;

(ii)     items (e) and (f), to the extent that these requests encompass records relating to the 2008 Flint division master jury wheel that are available for public inspection under 28 U.S.C. § 1868; and

(iii)    items (g) and (h), in the format customarily made available for inspection by the court clerk, to the extent that these requests seek the disclosure of the juror number, race, and Hispanic ethnicity information contemplated under Administrative Order No. 00-AO-060.

In all other respects, Defendant's request for information bearing upon this District's juror selection process is denied.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  February 7, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 7, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

21