UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,         HON. MARK A. GOLDSMITH
v.                   Case No. 12-CR-20287-4

JOHNATHAN L. OLDHAM, D-4,

      Defendant.
_____/

## ORDER REFERRING DEFENDANT OLDHAM'S MOTION FOR ADDITIONAL DISCLOSURE OF JURY WHEEL MATERIALS (Dkt. 518)

On April 10, 2014, Defendant Johnathan Oldham — via his counsel, John Minock — filed a motion for disclosure of materials that he claims are necessary to determine the cause of purported underrepresentation of African-Americans in the jury wheel from which the grand jury for this case was drawn. See Def. Mot. at 1 (Dkt. 518). This is the second such motion Defendant Oldham has filed. See Def. Mot. for Disclosure (Dkt. 192). Like the first disclosure motion, the instant motion seeks information beyond juror number, race, and/or Hispanic ethnicity, thereby triggering Administrative Order No. 00-AO-060, which requires that any such motion be referred to the Chief Judge of the District. Administrative Order No. 00-AO-060, available at http://www.mied.uscourts.gov/Rules/Plans/00-AO-060.pdf. Therefore, this Court refers Defendant's motion to Chief Judge Rosen for resolution.

While the Court is obligated to refer the motion under the Administrative Order, it sets forth its view below on the apparent mootness and timeliness of the motion, in light of the rapidly approaching trial, currently scheduled to begin May 12, 2014. As the procedural history summarized below demonstrates, the time for Defendant to have filed a challenge to the grand jury wheel has lapsed, making his current motion for discovery of information to support such a

1

motion moot. Furthermore, the current motion is untimely under the Court's scheduling order. But for the Administrative Order, the Court would deny the motion on such grounds. However, in light of the Administrative Order, the Court believes the prudent course is to refer the motion to the Chief Judge for his consideration of these grounds, and any other factors he deems appropriate.

The original indictment in this action was returned on May 2, 2012. Indictment (Dkt. 3). After a series of status conferences, trial was originally scheduled for October 21, 2013 (Dkt. 130). Per the parties' request, the Court subsequently adjourned the trial date twice — once to January 27, 2014 (Dkt. 171), and then, over two Defendants' objection, to May 12, 2014 (Dkt. 330). The parties recently requested a brief, two-week adjournment; the Court has not yet decided whether to grant that request.

Defendant Oldham filed his first motion for disclosure of jury wheel materials on April 12, 2013 (Dkt. 192). Pursuant to the Administrative Order, the Court referred that motion to the Chief Judge (Dkt. 198).

Chief Judge Rosen issued an opinion and order on February 7, 2014, granting the motion in part and denying the motion in part (Dkt. 358). In particular, Chief Judge Rosen ordered the disclosure of materials that were subject to public disclosure under 28 U.S.C. § 1868, the District's juror selection plan, and the Administrative Order. He denied Defendant's request to the extent it sought any information beyond these materials. However, he noted that "[i]f this inquiry should uncover evidence supportive of a prima facie showing of . . . a violation [of Defendant's Sixth Amendment rights or the Jury Selection and Service Act, 28 U.S.C. § 1861, et seq.], and if Defendant can then demonstrate a need for additional, more specific information

that would assist him in establishing such a violation, he may revisit this matter with the Court in light of these developments." Id. at 19-20.

Defendant's counsel has recently informed the Court that he did not receive the materials covered by Chief Judge Rosen's order from the Jury Clerk until nearly a month after the opinion was issued — March 4, 2014. However, Defendant never apprised the Court of any delay in receiving the materials until after he had received them, nor did he request the Court's assistance in obtaining the materials sooner.

On March 18, 2014 — two weeks after receiving the materials — Defendant filed an ex parte request, under seal, to approve payment for a statistical expert to help digest the provided material.[1] Defendant's counsel claimed that an expert was necessary because "[t]he jury clerk supplied ten fairly extensive items" in response to Chief Judge Rosen's order, and help was needed to evaluate the materials. Although the Court expressed some hesitance regarding the timeliness of Defendant's motion for authorizing payment of the statistical expert in the Court's March 21, 2014 order (filed under seal), the Court granted the request (filed under seal) on March 27, 2014.

The Court held an on-the-record conference with all counsel (with Defendants present) on March 26, 2014, at which the Court made clear that it wanted to establish final deadlines for filing motions because of the fast-approaching trial date. The Court began by noting that, with trial rapidly approaching, the Court was going to become much less flexible regarding dates. 3/26/14 Hr'g Tr. at 144 (Dkt. 483) ("I'm just alerting everybody the closer we get to trial, the

---

[1] The Court allowed these documents to be filed under seal to keep confidential Defendant's desire to utilize a statistical expert. This no longer needs to be kept secret in light of Defendant's attachment of the purported expert's affidavit to his motion. Nevertheless, given that these documents also refer to how much money has been approved to expend on this purported expert, the Court keeps the documents under seal.

3

more cramped everyone's going to feel about taking care of all these issues. That's why I'm trying to be as expeditious as possible."). The Court then asked what additional motions were contemplated:

> THE COURT: . . . Speaking now of motions, I want to know if there are any additional motions that are being contemplated and I ask that question with some trepidation because I've already set a motion-cut off in my January 29 order and that was based on earlier discussion at a hearing and we all agreed that we were going to file motions within 30 days of the order unless there was a government disclosure that gave rise to the need to file a motion in which case we said it would be 10 days after the disclosure. Are there any other motions that someone is contemplating filing?

Id. at 147-148. The Court repeated the inquiry multiple times. Id. at 148-154. Mr. Minock did not advise that he was contemplating any additional motions regarding the jury wheel in response to these questions. But after the Court asked specifically whether the grand jury-wheel challenge was still a live issue, Mr. Minock stated that he was still contemplating filing a motion regarding the grand jury wheel, but that he needed to confer with his expert. And he said he would be in a position to file any such motion by April 7, 2014:

> THE COURT: . . . Back in early February[,] Chief Judge Rosen issued an opinion in connection with a motion for grand jury materials. Is there any motion contemplated challenging the grand jury wheel or is that no longer a live issue?
>
> MR. MINOCK: The grand jury wheel's still a potential issue and I anticipate filing something on that very soon with the assistance of a consultant.
>
> THE COURT: When will you be in a position to do that?
>
> MR. MINOCK: Week from Monday.
>
> THE COURT: So you're talking about April 7th then?
>
> MR. MINOCK: Yes. I have to talk to the statistician, but I'm anticipating he can get the work done quickly.

4

Id. at 152-153. Therefore, the Court issued an order on March 28, 2014 providing that "Defendant Oldham's grand jury wheel challenge is due on or before April 7, 2014. Any other motion challenging the grand jury wheel or petit jury wheel is also due on or before April 7, 2014." 3/28/14 Order (Dkt. 477).

On April 7, 2014, at 4:49 P.M., the Court's case manager received an e-mail from Mr. Minock. In the e-mail, he claimed that he had been "conferring with [his] expert on whether there is a basis for a motion regarding the challenge to the grand jury wheel." He also stated that he would "need till Wednesday to finish my research and decide whether to file a motion." The Court issued an order the next day granting the request for an extension (Dkt. 511). The order explained that, although Mr. Minock's e-mail "fails to explain why this research could not have been performed by the due date for filing the motion," the Court agreed to "extend[] the time for Defendant Oldham to file any grand jury wheel challenge up to and including April 9, 2014." The Court emphatically warned, however, that it "**will not** grant any further extensions regarding grand jury or petit jury wheel challenges." Id. (emphasis in original).

April 9, 2014 came and went with no word from Mr. Minock regarding a grand jury-wheel challenge. Mr. Minock did not file any such motion, nor did he request an extension of time to do so.

At 5:00 P.M. on April 10, 2014, the Court held a telephonic status conference with the parties regarding their request to adjourn the trial for two weeks. During this call, the Court asked whether defense counsel anticipated filing any further motions. Although a few people stated a possible intention to file certain motions arising out of recent Government disclosures, Mr. Minock did not mention his intent to file anything further regarding the grand jury wheel.

Nevertheless, less than two hours later, Mr. Minock filed the instant motion for additional disclosure of jury wheel materials.

This history demonstrates that the instant motion is moot. Its sole purpose is to acquire additional discovery in aid of a motion to challenge the grand jury wheel. However, the deadline for filing a challenge to the grand jury wheel expired on April 9, 2014. Given that the instant motion would only be of value to gather support for a motion that is now barred, the instant motion is moot. See Dewulf v. McQuiggin, No. 10-14129, 2011 WL 3648380, at *5 (E.D. Mich. Aug. 18, 2011) ("Petitioner also has filed motions for an evidentiary hearing and for discovery. In light of the fact that the [habeas] petition is time-barred, the Court is denying the motions as moot.").

It must be stressed that the jury-wheel-challenge deadline of April 7 (later moved to April 9) was not set unilaterally by the Court. It was a deadline Defendant's counsel proposed and agreed to at the March 26, 2014 conference. And it was set so that neither the Court nor counsel would be burdened, close to trial, by what surely would be a complex motion challenging the grand jury wheel. It should come as no surprise to Defendant's counsel that the Court would enforce the April 9 deadline strictly — especially since the Court expressly stated in its April 8 order that there would be no further adjournments.

In filing the instant motion for additional discovery, Defendant's counsel appears to be oblivious to these facts. He utterly fails to address in his motion how the additional information he seeks could possibly be of any use, given that the filing deadline for a jury-wheel challenge has passed. Nor has he asked that the jury-wheel-challenge deadline be extended beyond April 9. Under such circumstances, the motion for additional discovery is moot.

It is also untimely. On January 29, 2014, the Court issued a stipulated scheduling order setting specific deadlines for motions. See 1/29/14 Order (Dkt. 342). To encourage other Defendants contemplating disclosure motions to file them promptly, the Court fixed February 10, 2014 as the deadline for any other motions seeking disclosure of jury wheel materials. Id. Further, the order provided that "[a]ny other motions by defendants not specifically referenced herein shall be filed within 30-days, unless the motion is precipitated by a supplemental disclosure of the government, in which case the motion will be filed within 10-days of disclosure." Thus, the January 29 stipulated order set February 28, 2014 as the outside deadline for filing motions, unless the motion was prompted by a Government disclosure. Under the January 29 order, the instant motion for additional discovery should have been filed by February 28, at the latest.

Defendant has never sought relief from the February 28 deadline. Although aware of Chief Judge Rosen's opinion as of February 7, he has never asked this Court for relief from that deadline for the purpose of seeking additional information. It is true that the production of materials required under Chief Judge Rosen's order post-dated the February 28 deadline by two business days — which would have supported a prompt request for a reasonable extension of time — but no such request, prompt or otherwise, was ever made.[2]

Even if such a request were made now, Defendant would face a tall hurdle. Extensions of a scheduling order require a showing of diligence, which Defendant would be hard-pressed to demonstrate. Mr. Minock did not seek the Court's assistance in the interval between February 7, when Chief Judge Rosen issued his order, and March 4, when the materials were provided. Mr. Minock then took two weeks to realize that the materials were so complex that expert assistance

---

[2] Notably, Defendant did ask for and received extensions to file motions for discovery relative to a petit jury-wheel challenge. See Stip. and Orders (Dkts. 360, 374).

7

was necessary. After his request to hire an expert was approved, Mr. Minock did not suggest that the jury-wheel-challenge deadline of April 7, 2014 — which Mr. Minock himself proposed — would be difficult to meet, or that additional materials may be necessary. To the contrary, he raised no concerns about this deadline until ten minutes before the close of business on the day his jury-wheel-challenge motion was due. Even at that time, however, Mr. Minock did not claim that additional materials may be necessary; instead, he requested an additional two days to consider whether to file a motion "regarding the challenge to the grand jury wheel." The Court granted this extension, but stated in no uncertain terms that no further extensions would be granted. Instead of filing a jury-wheel challenge, defense counsel filed a motion for more information without addressing the timeliness issue at all. This hardly demonstrates due diligence.

In addition to diligence, courts look to prejudice to other parties and any deleterious impact on the court in deciding whether to allow an adjustment to a scheduling order. See 18 U.S.C. § 3161(h)(7)(A), (B) (listing factors for determining whether to grant a continuance, including the ends of justice, the interests of the public, defendant's interest in a speedy trial, and prejudice to the parties in having sufficient time to prepare).

Here, both prejudice to other parties and deleterious impact on the Court would be present because entertaining Defendant's motion would almost certainly require a significant delay in the trial. Briefing on the disclosure motion would consume several weeks and the preparation of an opinion by Chief Judge Rosen would likely require significant additional time. If the motion were granted, several weeks, if not months, would be devoted to production of materials, analysis by Defendant's expert, briefing on a challenge motion and judicial

consideration of that motion. The trial in this matter would have to be adjourned by several months, at the very least.

Other Defendants in this case have objected to lengthy trial adjournments in the past based on speedy-trial concerns. See Mem. Regarding Speedy Trial (Dkt. 321). Entertaining Defendant's motion would compromise the speedy-trial interests of other Defendants. See Maples v. Stegall, 427 F.3d 1020, 1027-1028 (6th Cir. 2005) (ordering issuance of habeas writ based on denial of petitioner's constitutional speedy-trial rights, where delay of trial was caused largely by motions filed by co-defendant and court delay arising out of co-defendant's requests and conduct).

Furthermore, the Court has an interest in moving this case to trial promptly. United States v. Kilpatrick, No. 10-20403, 2012 WL 3465805, at *8 (E.D. Mich. Aug. 15, 2012) (denying request to adjourn trial and substitute counsel because, in part, of the public's interest in the prompt and efficient administration of justice); Freeman v. City of Detroit, No. 09-13184, 2011 WL 2531248, at *1-2 (E.D. Mich. June 24, 2011) (noting that the parties' unilateral decision to move deposition dates beyond the court-ordered deadline was improper given the "public's interest in the prompt and efficient administration of justice"). The trial has been adjourned on multiple occasions, and closure must be reached in this case promptly.

Defendant may be under the misapprehension that the Court's scheduling orders are, somehow, suspended because of the Administrative Order's requirement that motions seeking certain kinds of discovery must be referred to the Chief Judge for decision. However, nothing in the Administrative Order purports to override the efficacy of the scheduling orders issued in a case. In fact, the enduring efficacy of scheduling orders is confirmed by the fact that the Administrative Order acknowledges that the assigned judge remains empowered to decide the

substantive jury-wheel-challenge motion, even though the disclosure motion is decided by the Chief Judge. See Administrative Order No. 00-AO-060 at 1 ("The Court reaffirms the principle that legal questions arising in a case assigned to the docket of a judge of this Court are to be decided by the assigned judge."); see also United States v. Ferguson, 863 F. Supp. 2d 661 (E.D. Mich. 2012) (Lawson, J.) (deciding motion to strike venire based on purported underrepresentation of African-Americans). Given that the assigned judge remains empowered to decide the jury-challenge motions, it would be anomalous if the assigned judge's scheduling orders regarding motions for disclosure — which are ancillary to jury-wheel-challenge motions — could simply be ignored. And, if scheduling orders could be ignored, defense counsel would be granted the extraordinary power of unilaterally adjourning a trial date by the simple expedient of filing a disclosure motion. Nothing in the Administrative Order sanctions such an absurdity.

Furthermore, nothing in Chief Judge Rosen's opinion would support the view that the Court's scheduling orders may be overridden. It is true that his opinion stated that that "[i]f [the initial disclosure of information] should uncover evidence supportive of a prima facie showing of . . . a violation, and if Defendant can then demonstrate a need for additional, more specific information that would assist him in establishing such a violation, he may revisit this matter with the Court in light of these developments." See 2/7/14 Order (Dkt. 358). But that language did not purport to grant an allowance to file a motion for additional disclosure beyond the deadline set forth in the Court's scheduling order.[3]

---

[3] Even if Chief Judge Rosen's opinion could be read as eclipsing this Court's scheduling order, Defendant has not satisfied the requirements of the opinion for filing a renewed motion for additional disclosure. While Defendant appends the affidavit of his expert to his motion, he fails to identify which portions of the affidavit he thinks support a prima facie showing of a violation. Nor does Defendant cite any legal authority or provide any substantive argument supporting a claim of a violation. To the contrary, Defendant simply claims entitlement to the requested information. As such, the Court does not believe Defendant has met his burden of showing that

10

Based on the above, the Court would deny the instant motion as moot and untimely. Nevertheless, given Administrative Order No. 00-AO-060, the Court refers Defendant's motion (Dkt. 518) to Chief Judge Rosen for decision.

SO ORDERED.

Dated: April 14, 2014                                s/Mark. A. Goldsmith
       Flint, Michigan                                 MARK A. GOLDSMITH
                                                                                  United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Order was served upon parties of record on April 14, 2014 by electronic means and/or ordinary mail.

                                                                              s/Amanda Chubb for Deborah Goltz
                                                                              Case Manager

---

further materials will assist him in establishing a violation, as Chief Judge Rosen's opinion requires.