UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

D-4 JOHNATHAN L. OLDHAM,

      Defendant.
_____/

Case No. 12-20287
Hon. Mark A. Goldsmith
Hon. Gerald E. Rosen

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR ADDITIONAL DISCLOSURE OF JURY WHEEL MATERIALS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     April 24, 2014    

PRESENT: Honorable Gerald E. Rosen
                   Chief Judge, United States District Court

## I. INTRODUCTION

In an opinion and order dated February 7, 2014, the Court granted in part and denied in part a motion by Defendant Johnathan L. Oldham for disclosure of various court records bearing upon the process by which the grand jury in this case was selected. The materials disclosed as a result of this February 7 ruling were reviewed by an expert statistician, Jeffrey O'Neal Martin, who has opined (i) that the underrepresentation of African-Americans in the Flint Division qualified jury wheel from which the grand jury was drawn is statistically significant, and (ii) that this underrepresentation is attributable to some combination of (a) underrepresentation of African-Americans in the source lists

from which the 2008 master jury wheel for the Flint Division was derived, and (b) juror questionnaires that were either undeliverable or not returned.

Through the present motion filed on April 10, 2014, Defendant now seeks the disclosure of additional materials bearing upon the formation of the 2008 Flint Division master jury wheel and the qualified jury wheel from which the grand jury in this case was drawn. In support of this motion, Defendant argues that these additional materials are necessary to further explore the two possible causes of African-American underrepresentation identified by Defendant's expert statistician.

Pursuant to Administrative Order No. 00-AO-060 of this District, Defendant's present motion, like his earlier one, has been referred to the undersigned Chief Judge for a determination whether Defendant has shown "good cause" for the requested materials. As discussed briefly below, the Court finds that no further disclosure of materials is warranted, both on the grounds identified in Judge Goldsmith's April 14, 2014 order of referral, and for lack of a showing that the additional materials sought by Defendant will assist him in establishing a violation of either the Jury Selection and Service Act ("JSSA"), 28 U.S.C. § 1861 *et seq.,* or the Sixth Amendment to the U.S. Constitution.

## II. DISCUSSION

In its February 7, 2014 ruling on Defendant's initial motion for disclosure of juror selection materials, the Court granted access to certain (but not all) of the materials sought in this motion, finding that this limited disclosure would "provide sufficiently

fertile ground for Defendant's desired inquiry into a possible fair cross section violation." (2/7/2014 Op. at 20.)  The Court then observed that if Defendant's review of these materials "should uncover evidence supportive of a *prima facie* showing of such a violation, and if Defendant can then demonstrate a need for additional, more specific information that would assist him in establishing such a violation, he may revisit this matter with the Court in light of these developments." (*Id.*)  Through the present motion, Defendant cites the opinion of an expert statistician, Jeffrey O'Neal Martin, as lending support to his *prima facie* showing of a fair cross section violation, and as evidencing a need for additional data so that Defendant and his expert can further explore the possibility that African-Americans were systematically excluded from the qualified jury wheel from which the grand jury in this case was drawn.

As a threshold matter, however, Judge Goldsmith has found that Defendant's present motion was untimely filed after the deadline proposed by defense counsel and set by the Court for bringing motions challenging the grand jury wheel.  As recounted at length in Judge Goldsmith's April 14, 2014 order referring Defendant's motion for disposition by the undersigned Chief Judge pursuant to Administrative Order No. 00-AO-060, counsel for Defendant stated at a March 26, 2014 hearing that any further challenges to the grand jury wheel would be brought on or before April 7, 2014, and the Court thereafter entered an order establishing this deadline for filing motions challenging the grand or petit jury wheels.  (*See* 4/14/2014 Order of Referral at 3-5.)  Defense counsel

3

then sent an e-mail to the Court late on the afternoon of April 7 requesting a two-day extension of this deadline, and the Court entered an order extending the filing deadline to April 9, 2014 but cautioning that no further extensions would be granted. (*See id.* at 5.) This April 9 deadline, however, "came and went" with no motions filed challenging the grand jury wheel, nor did defense counsel "request an extension of time to do so." (*Id.*) Instead, the present motion was filed after regular business hours on April 10, 2014. Against this procedural backdrop, Judge Goldsmith reasons that Defendant's motion should be denied as untimely filed and as moot, where the "sole purpose" of this motion "is to acquire additional discovery in aid of a motion to challenge the grand jury wheel," but where "the deadline for filing a challenge to the grand jury wheel expired on April 9, 2014." (*Id.* at 6-7.)

     This Court agrees. As Judge Goldsmith observes, while Administrative Order No. 00-AO-060 dictates that motions for disclosure of juror selection information be referred to the Chief Judge, nothing in this Administrative Order "purports to override the efficacy of the scheduling orders issued in a case." (*Id.* at 9.) Rather, it remains the sole province of the presiding Judge to determine and establish appropriate deadlines governing the filing of motions and the conduct of the case generally. Indeed, the Administrative Order itself expressly "reaffirms the principle that legal questions arising in a case assigned to the docket of a judge of this Court are to be decided by the assigned judge," and that motions seeking the disclosure of juror selection information are referred

to the Chief Judge in order to advance the "efficient administration of justice." Administrative Order No. 00-AO-060 at 1. This efficiency interest would be disserved by exempting jury wheel challenges from the deadlines and other procedural requirements governing motion practice generally. Accordingly, the Court defers to Judge Goldsmith's judgment that Defendant's motion should be denied as untimely and moot.

In any event, even if this Court were to entertain Defendant's untimely motion, Defendant has failed to demonstrate that the additional materials he seeks will enable him to make a *prima facie* showing of a violation of the "fair cross section" requirements of the Sixth Amendment and the JSSA. As explained in the Court's prior February 7 ruling, the three elements of this *prima facie* showing are "(1) that a distinctive group is being excluded from the jury pool; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in comparison to the group's representation in the community at large; and (3) that this disparity is attributable to systematic exclusion of the group in the jury selection process." (2/7/2014 Op. at 9 (internal quotation marks and citation omitted).) Assuming, for present purposes, that the statistical analysis offered by Defendant's expert could satisfy the second prong of this showing, the question is whether the additional materials sought in Defendant's present motion could be expected to assist Defendant and his expert in satisfying the third element of the *prima facie* standard for a fair cross section violation.

The Court finds that they could not. Defendant's statistical expert has proposed two means by which the alleged underrepresentation of African-Americans in the qualified jury wheel from which the grand jury was drawn could be attributable to systematic effects inherent in this District's juror selection process. First, Defendant's expert opines that the underrepresentation of African-Americans could be due to juror questionnaires that were either undeliverable or not returned by their recipients. The Sixth Circuit has held, however, that non-responses "are not a problem 'inherent' to the jury selection procedures, but are the result of individual choice." *Bates v. United States,* No. 10-1094, 473 F. App'x 446, 451 (6th Cir. Apr. 2, 2012); *see also Smith v. Berghuis,* 543 F.3d 326, 341 n.5 (6th Cir. 2008) (observing that the courts "have been relatively uniform in finding that the failure to send additional letters to individuals who did not . . . respond to questionnaires was not 'systematic exclusion' within the meaning of *Duren* [*v. Missouri,* 439 U.S. 357, 99 S. Ct. 664 (1979)]"), *rev'd on other grounds,* 559 U.S. 314, 130 S. Ct. 1382 (2010); *United States v. Ferguson,* 863 F. Supp.2d 661, 669-70 (E.D. Mich. 2012) (collecting cases). Likewise, both the Sixth Circuit and this Court have rejected as speculative the notion that undeliverable jury questionnaires might contribute to the underrepresentation of African-Americans in a jury wheel, *see Bates,* 473 F. App'x at 451; *United States v. Kilpatrick,* No. 10-20403, 2012 WL 3133939, at *7 (E.D. Mich. Aug. 1, 2012), and Defendant's motion fails to explain how the additional materials he seeks would overcome this need to speculate and enable him to demonstrate systematic

exclusion attributable to this District's juror selection process.[1]

Next, Defendant's expert suggests that racial disparities in the underlying source lists used to create the 2008 Flint Division master jury wheel could be the cause of the alleged underrepresentation of African-Americans in the qualified jury wheel. Yet, as the Sixth Circuit has explained, "[v]oter registration lists are the presumptive statutory source for potential jurors," and "[t]he circuit courts are in complete agreement that neither the [JSSA] nor the Constitution require that a supplemental source of names be added to voter lists simply because an identifiable group votes in a proportion lower than the rest of the population." *United States v. Odeneal,* 517 F.3d 406, 412 (6th Cir. 2008) (internal quotation marks, alteration, and citations omitted). Moreover, while the case law confirms that disparities attributable to the use of voter registration lists do not give rise to a claim of systematic exclusion of a distinct and identifiable group from the jury

---

[1] As Defendant and his expert evidently recognize, when names are drawn from the master wheel in order to send out juror questionnaires, the Court has no way of knowing the race of the addressees, and it follows that there is no way to determine the race of those individuals to whom questionnaires could not be delivered. In the present motion, Defendant proposes to surmount this hurdle through reliance on county or zip code data, under the apparent premise that African-Americans in the Flint Division are highly concentrated in Genesee County. Yet, even assuming that statistical analysis of the additional data sought by Defendant revealed that questionnaires sent to Genesee County addresses were disproportionately likely to be undeliverable, Defendant and his expert would still be left to speculate that the undeliverable questionnaires sent to Genesee County addresses reflect the racial composition of Genesee County residents as a whole. More importantly, the courts have recognized that "[t]he inability to serve juror questionnaires because they were returned as undeliverable is not due to the system itself, but to outside forces, such as demographic changes." *United States v. Rioux,* 97 F.3d 648, 658 (2d Cir. 1996); *see also Bates,* 473 F. App'x at 452 n.3; *United States v. Carmichael,* 560 F.3d 1270, 1279 (11th Cir. 2009); *United States v. Orange,* 447 F.3d 792, 800 (10th Cir. 2006); *United States v. O'Reilly,* No. 05-80025, 2008 WL 4960173, at *5 (E.D. Mich. Nov. 20, 2008).

venire, the juror selection plan for this District nonetheless calls for these voter lists to be supplemented with lists of individuals who have been issued Michigan driver's licenses and state identification cards. *See* Administrative Order No. 00-AO-083, 2000 Juror Selection Plan § (f)(1).[2] To the extent that Defendant wishes to explore the manner in which these source lists are merged in order to ascertain whether this process might have contributed to any putative underrepresentation of African-Americans in the 2008 master jury wheel for the Flint Division, Judge Friedman addressed (and rejected) a similar argument in *O'Reilly,* explaining that even assuming this District might arguably employ a less-than-optimal method for merging voter registration and supplemental source lists, the incorporation of these supplemental lists nonetheless results in a juror selection process that "clearly exceeds that which is constitutionally and statutorily mandated." 2008 WL 4960173, at *4-*5; *see also United States v. Fieger,* No. 07-20414, 2008 WL 1902054, at *6 (E.D. Mich. Apr. 29, 2008) (observing that "because the names in the master wheel are randomly selected from neutral lists of registered voters, licensed drivers, and individuals who have been issued state identification cards, there is no reason to believe that this wheel might be the source of any systematic under-representation of a particular group in this District's jury pools").

In short, Defendant has failed to show that the additional materials sought in his

---

[2]As noted in the Court's February 7 ruling, while the Judges of this District recently adopted a revised juror selection plan, "the 2000 juror selection plan was in effect at the time the grand jury for this case was selected." (2/7/2014 Op. at 3 n.3.) Thus, the Court cites to the pertinent provision in the 2000 plan.

present motion will assist him in identifying and demonstrating a fair cross section violation, as these materials will not enable him to establish the "systematic exclusion" that is the third and final prong of a *prima facie* showing of such a violation. In addition, this Court believes itself bound by Judge Goldsmith's determination that Defendant's motion was untimely filed after the deadline established by Judge Goldsmith for pursuing challenges to the qualified wheel from which the grand jury in this case was drawn. It follows that Defendant's motion must be denied.

### III. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's April 10, 2014 motion for additional disclosure of jury wheel materials (docket # 518) is DENIED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: April 24, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 24, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135